Zenas Lyn SMITH *v.* NATIONAL CASHFLOW SYSTEMS, INC.

91-313                                    827 S.W.2d 146

Supreme Court of Arkansas
Opinion delivered April 6, 1992

*Young & Finley*, by: *Dale W. Finley*, for appellant.

*Peel & Eddy*, by *James S. Dunham*, for appellee.

JACK HOLT, JR., Chief Justice. In this case, we are requested to determine whether a licensed collection agency can obtain assignments of debts and then bring an action on the debts in its own name, as "the real party in interest," pursuant to Ark. R. Civ. P. 17(a).

The appellee, National CashFlow Systems, Inc. (CashFlow) is a duly licensed collection agency in the state of Arkansas. Under a written assignment form, which recited a payment of $10, CashFlow purchased assignments of two separate debts, totalling $196.84 and which were owed by appellant, Zenas Lyn Smith, to the Millard-Henry Clinic and the Peoples Bank and Trust Company. The debts are not in dispute.

CashFlow, through its attorneys, Peel and Eddy, filed a complaint in the Pope County Municipal Court requesting judgment in the amount of the total debt owed to both creditors, prejudgment interest of $15.67, and for interest on the judgment at the rate of 10% annum. CashFlow also requested attorney's

fees and costs. In his answer, Mr. Smith averred that CashFlow was not the real party in interest as required by Ark. R. Civ. P. 17(a) and that CashFlow's actions constituted the unauthorized practice of law. He requested dismissal of the complaint. The municipal court awarded CashFlow $212.51, with interest at 10% annum, and $100 in attorney's fees, following which CashFlow appealed to the Pope County Circuit Court.

After an evidentiary hearing and the submission of briefs, the circuit court found that an assignee for collection of an account is the real party in interest and that the actions of CashFlow did not constitute the unauthorized practice of law. The court awarded the agency the amount of the debt with interest, minus what had already been collected through writs of garnishment, and attorney's fees.

The issues in this case are so intertwined that we discuss them together.

Lisa Teaf, head of CashFlow's legal services department, testified at trial that it was CashFlow's practice to send out an assignment form to the client creditor in which the creditor verifies, by affidavit, the name of the debtor and the amount owed. The assignment recites that "for ten dollars and other good and valuable consideration," the undersigned assigns its claim against the debtor to CashFlow and grants CashFlow "full power to collect, sue for, or settle said claim, and endorse remittances, as CashFlow Collections; to retain interest if collected." Ms. Teaf testified that when the affidavit and assignment is returned, the department "works up" a complaint and summons which are signed by Mr. Peel, with the private law firm of Peel and Eddy. If collection efforts are successful, CashFlow pays its legal expenses and them remits 50% of the remainder to the client. Ms. Teaf stated once the client assigns the account, it belongs solely to CashFlow to handle as it chooses.

Mr. Smith argues the assignment of the accounts from his creditors to CashFlow was a mere "subterfuge to gain admission to the courts." He points to the fact that the recited ten dollar payment in the assignment form was never actually paid to CashFlow's clients and to CashFlow's practice of reimbursing the creditors for half of any monies collected. In essence, Mr. Smith argues the assignment is a sham transaction which should

preclude CashFlow from bringing an action on the debts, thereby warranting dismissal of the lawsuit.

■ Rule 17(a) provides "every action shall be prosecuted in the name of the real party in interest." The real party in interest is generally considered to be the person or corporation who can discharge the claim upon which the allegation is based and is not necessarily the person ultimately entitled to the benefit of any recovery. *Gladden* v. *Bucy*, 299 Ark. 523, 772 S.W.2d 612 (1989); *Childs* v. *Philpot*, 253 Ark. 589, 487 S.W.2d 637 (1972).

■ Ark. Code Ann. § 4-58-105(a) (1987) states, in relevant part, that "every written assignment made in good faith. . .on account receivable or any moneys due or to become due on an open account. . .shall be valid and complete at the time of the making of the assignment. . . ." Furthermore, although Ms. Teaf's testimony was unclear as to whether CashFlow ever actually paid the $10 purchase fee, Ark. Code Ann. § 4-58-103 (1987) provides that "it shall not be necessary for any assignee to set forth the consideration of any of the assignments on any such assigned paper."

■ In *Higginbotham* v. *Ritter, Executrix*, 200 Ark. 376, 139 S.W.2d 27 (1940), this court held that the assignment of a promissory note, which simply recited "good and sufficient consideration," was properly executed and passed good title to the assignee, thus making him the real party in interest and entitling him to proceed in the action as the sole plaintiff. The court cited what is now Ark. Code Ann. § 4-58-109 (1987), which provides that an assignee bringing suit on any assigned paper is not required to prove the assignment unless the defendant alleges the assignment was forged. No such allegation was made in *Higginbotham*, or here.

■ Since CashFlow, as the assignee of a properly assigned account, is the entity who can discharge the claim, it is the real party in interest and, as such, is entitled to bring this action.

■ As to Mr. Smith's complaint that CashFlow was engaged in the unauthorized practice of law, we note that as a litigant in the action, Mr. Smith has standing to raise the issue as a defense. However, even if we were to find that CashFlow was engaged in the unauthorized practice of law, it would not

extinguish or invalidate a just debt. *See Davis* v. *University of Arkansas Medical Center and Collection Serv. Inc.*, 262 Ark. 587, 559 S.W.2d 159 (1977).

■ In *Pope County Bar Ass'n* v. *Suggs*, 274 Ark. 250, 624 S.W.2d 828 (1981), we recognized that what constitutes the practice of law is extremely elusive. This is confirmed when we look at the scant facts before us. From the facts presented, there is no evidence CashFlow furnished, or agreed to furnish legal services or advice to the creditors which, along with the preparation of certain legal documents, is usually of concern in determining whether a party is illegally practicing law. *See Pope County Bar Ass'n, supra*; *Gaylor* v. *Gaylor*, 224 Ark. 644, 275 S.W.2d 644 (1955); *Arkansas Bar Ass'n* v. *Union National Bank*, 224 Ark. 48, 273 S.W.2d 408 (1954). As to the preparation of documents, at best, we have Ms. Teaf's testimony that when the affidavits and assignments are returned, the legal services department "works up" a complaint and summons to be signed by its privately retained attorney. We do not know whether or not "works up" a complaint means drafting, preparing, or filling in the blanks on forms furnished by counsel. In short, based on the meager facts in the record, we cannot reach the question of whether CashFlow was engaged in the unauthorized practice of law.

Lastly, we think it significant to note that by accepting responsibility for the complaint under Ark. R. Civ. P. 11, Mr. Peel was the attorney involved, not CashFlow.

For the foregoing reasons, we affirm.