Judith A. NOSAL *v.* James A. NEAL, as Executive Director of the Supreme Court Committee on Professional Conduct; and Leslie Steen, as the Clerk of the Arkansas Supreme Court

94-395                                   888 S.W.2d 634

Supreme Court of Arkansas
Opinion delivered November 21, 1994

*Dover & Dixon, P.A.*, by: *Philip E. Dixon* and *M. Darren O'Quinn*, for appellant.

*Morgan E. Welch* and *Christopher R. Heil*, for appellees.

ROBERT H. DUDLEY, Justice. Judith A. Nosal filed an application with this court's Client Security Fund Committee and asked that she be reimbursed for a loss suffered as the result of a defalcation by her attorney. The Client Security Fund Committee referred the claim to the Committee on Professional Conduct. *See* Client Sec. Fund Comm. R. 4(F). The Executive Director of the Committee on Professional Conduct responded that the Committee on Professional Conduct could not certify the claim for payment to the Client Security Fund Committee because Ms.

Nosal's attorney, who is now deceased, had not been suspended or disbarred from the practice of law and because no proceedings had been commenced against him at the time of his death. We reverse and remand for certification and payment of the claim.

## I.

The source of power to establish both the Committee on Professional Conduct and the Client Security Fund Committee is Amendment 28 to the Arkansas Constitution, which provides: "The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law."

Section 5 of the Procedures Regulating Professional Conduct of Attorneys at Law provides a right of appeal for an attorney who has been disbarred or suspended, but the Procedures do not expressly provide a right of appeal for a client filing a claim against the Client Security Fund. Likewise, the rules governing the Client Security Fund Committee do not provide a right of appeal for a claimant seeking reimbursement from the Fund. Even so, a right of appeal does exist. *See Sexton* v. *Supreme Court Comm. on Professional Conduct*, 297 Ark. 154-A, 761 S.W.2d 602 (1988).

We have stated that proceedings before the Committee on Professional Conduct are in the nature of administrative proceedings and for the most part are to be carried out as though the committee was an administrative agency. *Walker* v. *Supreme Court Comm. on Professional Conduct*, 275 Ark. 158, 628 S.W.2d 552 (1982). The same reasoning applies to proceedings before the Client Security Fund Committee.

All administrative remedies must be exhausted before a right of appeal exists from one of our committees. *McCullough* v. *Neal*, 314 Ark. 372, 862 S.W.2d 279 (1993). In this case Ms. Nosal has exhausted her administrative remedies and is entitled to pursue her appeal.

## II.

Ms. Nosal employed attorney Ron Bruno to represent her in a matter before the Internal Revenue Service. On July 19, 1991, she gave Mr. Bruno a check for $41,190.69 to satisfy a lien filed by the Internal Revenue Service. The check should have been

deposited in the attorney's escrow account, but it was deposited in his regular business account and then converted to his own personal use. Mr. Bruno did, however, reimburse Ms. Nosal the sum of $8,500.00 in July 1993, but then additionally converted two checks from Ms. Nosal totaling $1,209.50. As a result, Ms. Nosal suffered a loss of $33,900.19. Mr. Bruno died on September 10, 1993. The Internal Revenue Service lien was not satisfied, and Mr. Bruno's estate is without sufficient assets to reimburse Ms. Nosal. She filed a claim with the Client Security Fund Committee on October 29, 1993.

We created the Client Security Fund Committee "for the purpose of protecting clients from losses caused by the dishonest conduct of members of the State Bar of Arkansas." *In re Client Security Fund*, 254 Ark. 1075, 1075, 493 S.W.2d 422, 422 (1973). In the per curiam creating the Fund we provided for payment only in cases in which the attorney had been disbarred or suspended from the practice of law or had voluntarily surrendered his attorney's license. However, in 1987, we amended the original per curiam to provide for reimbursement to a client when the attorney "died before disbarment, suspension, or surrender of license could be had." *In re Client Security Fund*, 291 Ark. 647, 647 (1987). *See also In re Client Security Fund*, 314 Ark. 635, 858 S.W.2d 670 (1993) (which reaffirms the 1987 amendment).

The Committee on Professional Conduct denied Ms. Nosal's claim because "[n]o lawyer disciplinary action was pending against Mr. Bruno at the time of his demise." The ruling was in error because the per curiam expressly provides that it is not necessary for disciplinary action to be pending when the attorney has "died before disbarment, suspension, or surrender of license could be had." We intend for the Fund to reimburse clients in situations such as this.

On appeal, the Committee asks us to interpret the per curiam's language to mean that a claim should not be allowed when there has been no disciplinary action before the death of an attorney and the client was not diligent in filing a disciplinary action. In this case, the conversion took place in 1991, but the claim was not filed until 1993. The Committee contends the client was not diligent. There may be a case where a client would not act with diligence and the claim would be stale, but we need not decide that issue in this case, for this claim was not stale.

Here, the attorney-client relationship was ongoing. Ms. Nosal was paying Mr. Bruno a retainer fee of $750 to $1000 per month and questioned Mr. Bruno about the lien still being in effect and about her funds. The attorney reimbursed Ms. Nosal $8,500 in July 1993, but later converted an additional $1,209.50. He died on September 10, 1993. Thus, the claim was not stale.

The Committee also asks us to recognize that reimbursement from the Fund to a client is a matter of grace and not a matter of right. Reimbursement is a matter of grace and not a matter of right, *see* Client Sec. Fund Comm. R. 4(F), but a client should be reimbursed when he or she comes within the provisions of the rules for reimbursement and the Client Security Fund Committee has sufficient funds to make the payment. The "matter of grace" language in the per curiam must be read in conjunction with the sentence stating that the Fund is not insurance. The money to reimburse clients comes from this court's annual assessment of $4.00 on each member of the Bar of Arkansas, and if those funds should not be sufficient to pay all claims in any one year, the Client Security Fund Committee might pay some claims in one year and the others in the next year, or might pay only a percentage of each valid claim. Thus, the per curiam provides that the Fund is not insurance and that payment is a matter of grace. Even so, when there are sufficient funds to reimburse the client and the claim validly comes within the provisions, payment should be made.

### III.

We appreciate the considerable time the members of both the Committee on Professional Conduct and the Client Security Fund Committee give, and will continue to give, to the improvement of the Bar of Arkansas. Correspondingly, we appreciate the work of the attorneys for Ms. Nosal, for they know they will not be remunerated for their services. *See* Client Sec. Fund Comm. R. 4(F). It is our hope that the creation and implementation of the Client Security Fund and the Committee on Professional Conduct, combined with the services of members of the Bar of Arkansas, as in this case, demonstrate the strong commitment of this court and the Bar of Arkansas to the protection of clients from losses caused by dishonest conduct of members of the Bar.

Reversed and remanded.

NEWBERN, J., not participating.