Mary M. KNIGHT, Individual;
and Knight Counseling, Inc. *v.*
William DAY, an Individual

00-731                                     36 S.W.3d 300

Supreme Court of Arkansas
Opinion delivered January 25, 2001

Harrington, Miller, Neihouse & Krug, P.A., by: *Wayne Krug*, for appellant.

Law Offices of John R. VanWinkle, by: *John VanWinkle*, for appellee.

W.H. "DUB" ARNOLD, Chief Justice. The issue in this appeal is whether the appellee committee constructive fraud by allegedly engaging in the unauthorized practice of law. The trial court found no fraud. We agree with the trial court and hereby affirm.

The facts of the case are as follows. Appellants had hired appellee William Day to perform accounting services. Appellant Mary Knight, a licensed clinical social worker (L.C.S.W.), had started her own business entitled Knight Counseling, Inc. Ms. Knight was in the process of obtaining a contract with the State and needed to obtain a legal business entity for her practice. Ms. Knight had hired a tax attorney who established her company as a professional limited liability company (PLLC), but she later discovered that it was not going to be valid.[1]

In late 1994, Ms. Knight consulted with appellee William Day upon another person's recommendation. Mr. Day holds no professional licenses or certificates; he acts as a tax practitioner. Ms. Knight testified that Mr. Day told her they needed to dissolve the PLLC and set up a Sub S Corporation. Ms. Knight testified that Mr. Day told her he had such experience and that he would be able to draft all the necessary documents. However, at their initial meeting, Mr. Day referred Ms. Knight to Mr. George Oleson and Mr. J.D. Moon, both attorneys. He later completed the necessary paperwork and dissolved the PLLC; Ms. Knight subsequently received a Certificate of Dissolution for the PLLC.

After the creation of the Sub S Corporation,[2] Ms. Knight

---

[1] It seems that Ms. Knight received such notice from the State.

[2] It appears that Mr. Day prepared the following corporate documents and presented

brought in another person, Brenda Baker, a licensed social worker (L.S.W.), to work with her. Ms. Knight then discussed Ms. Baker's addition to the practice in terms of how to treat her for payroll purposes. Ms. Knight testified that she discussed with Mr. Day the fact that Ms. Baker could not be an owner or partner in the business, due to the State's regulations, and that if such occurred, Knight's license could be in jeopardy.

Ms. Knight testified that Mr. Day told her if Ms. Baker was a shareholder in the company, she would not be perceived as an owner and that she could be treated the same as Ms. Knight for tax purposes. Ms. Baker was so treated; and, in 1995, Mr. Day prepared Ms. Knight's personal and corporate tax returns for 1994. Later, in January or February of 1997, Mr. Day told Ms. Knight that he wanted to lighten his client base for personal reasons and referred her to Dan Downing, another accountant.

After meeting with Mr. Downing, he told Ms. Knight, after reviewing her tax documents, that they had not been prepared accurately and that she needed to have them amended to remove Ms. Baker as a shareholder. Mr. Downing did not make all of the suggested changes; Ms. Knight later hired Jack Bottoms, who filed amended tax returns and amended 941 forms on her behalf. Ms. Knight then filed a cause of action against William Day alleging accounting malpractice and illegal practice of law without a license.

Following a one-day trial on January 5, 2000, the trial court stated its failure to find that fraud or misrepresentation of fact had occurred; the court found that Ms. Knight failed on her complaint for accounting malpractice and also failed on her complaint for fraud and misrepresentation. The trial court issued its order on January 5, 2000 (filed on February 22, 2000) dismissing with prejudice both counts of accounting malpractice and fraud. It is from that order that the instant appeal is taken. Appellants assert as the only point on appeal that the trial court erred in finding that appellee had not committed constructive fraud by engaging in the unauthorized practice of law.

---

them to Ms. Knight for her signature: the articles of incorporation, the corporate franchise tax form, an election by the corporation as a Subchapter S (Arkansas form 1103), a consent to action taken in lieu of an organizational meeting, minutes of a special meeting of directors, and the resolution for the authorization of corporate loans.

■ The standard of review on appeal for bench trials is whether the trial judge's findings were clearly erroneous or clearly against the preponderance of the evidence. *See Ford Motor Credit Co. v. Ellison,* 334 Ark. 357, 361, 974 S.W.2d 464, 467 (1998). This Court reviews the evidence in the light most favorable to the appellee, resolving all inferences in favor of the appellee. *Id.* Disputed facts and determinations of credibility of witnesses are within the province of the factfinder. *Id.*

■ ■ Here, appellants assert that appellee committed constructive fraud.[3] To establish fraud, a plaintiff must show: (1) a false representation of material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance on the representation; and (5) damage suffered as a result of the reliance. *Scollard v. Scollard,* 329 Ark. 83, 947 S.W.2d 345 (1997); *see also Farm Bureau Policy Holders & Members v. Farm Bureau Mut. Ins. Co. of Ark., Inc.,* 335 Ark. 285, 984 S.W.2d 6 (1998).[4] Constructive fraud can exist in cases of rescission of contracts or deeds and breaches of fiduciary duties, but certainly a plaintiff must show a material misrepresentation of fact. *Id.*

■ ■ Constructive fraud is defined as a breach of a legal or equitable duty which, irrespective of the moral guilt of the fraud feasor, the law declares fraudulent because of its tendency to deceive others. Neither actual dishonesty nor intent to deceive is an essential element. *See RLI Ins. Co. v. Coe,* 306 Ark. 337, 813 S.W.2d 783 (1991). The charge of fraud must be sustained by clear, strong, and satisfactory proof. *Ark. State Hwy. Comm'n v. Clemmons,* 244 Ark. 1124, 428 S.W.2d 280 (1968).

Appellants argue that appellee held himself out as having the requisite skill and ability to draft the necessary corporate documents. Appellants state that appellee's suggestion to have the documents reviewed by an attorney and have his or her name entered as corporate counsel did not come until six months after the corpora-

---

[3] It should be noted that although appellants pled actual fraud in their complaint, they argued constructive fraud at trial, without objection by appellee.

[4] In *Farm Bureau,* the Court inadvertently labeled these elements as those that must be established to prove constructive fraud, when they are actually the elements of fraud, rather than *constructive* fraud.

tion was improperly formed. Appellants assert that because the corporation was not properly formed under the Arkansas Professional Corporations Act, Mr. Day's holding himself out as competent to provide services in corporate consulting constituted the communication of a material misrepresentation "of the fact" and that he should have known that the representation was false.

Appellants allege that appellee intended to induce action in reliance on his representation such that Ms. Knight would employ him for the sum of $600.00. Appellants argue that Ms. Knight and her company suffered damages in that the corporation was improperly structured, including the sums paid to appellee for the improper corporation formation and all sums expended to correct the deficiencies.

Appellants further maintain that appellee committed constructive fraud when he discussed whether Brenda Baker was at a licensure level sufficient to be an officer, director, and shareholder in a professional corporation. Appellants assert that appellee held himself out as one capable of making this legal determination and that he knew or should have known that such a representation was false. Again, appellants allege that appellee intended to cause reliance on that representation and that Ms. Knight justifiably relied on what she thought was professional advice, such that she suffered damages, including considerable accounting fees in amending corporate returns and 941s, and incurred considerable penalties and interest with the late payment of payroll taxes.

Appellants conclude that the fact that appellee provided legal advice to appellants regarding ownership of stock in what should have been a professional corporation, and the fact that he held himself out as capable of properly preparing the corporation and drafting corporate documents, is sufficient improper action to constitute constructive fraud. In fact, appellants claim, there is such a danger to this type of activity, it should be deemed by the Court to be *per se* constructive fraud. We disagree with the assertions of the appellants.

In this case, appellants have failed to prove even the first element of fraud, that is, a false representation of material fact. Appellee never implied or stated that he was an attorney. Although appellant Mary Knight testified that Mr. Day did not tell her that he

had an agreement with Mr. Oleson and Mr. Moon to review all of his documents, Mr. Day testified that he told her that all documents that were prepared from the beginning, including the dissolution, would need to be reviewed by an attorney. As stated above, disputed facts and the credibility of witnesses are squarely within the province of the factfinder, which was in this case the trial court. *See Ford Motor Credit Co. v. Ellison, supra.* The trial court clearly believed Mr. Day's testimony, as evidenced by the court's findings at trial:

> He told her he was not a lawyer and she knew that he was not a lawyer. He gave them names of two lawyers to call and she calls one and chooses not to go in, and she sees Mr. Bond and doesn't have him review all of the papers and see that he has committed fraud. . . . Again, he's given her all kinds of opportunities to talk to lawyers, and if she chooses not to, I think she's hard-pressed to come in this court and say, "Judge, he pulled the wool over my eyes and he duped me and I didn't have any idea that I was getting ready to be taken to the cleaners because of his actions." And that's just not the facts the case show.

Additionally, appellee sent appellant Mary Knight a letter, dated June 10, 1995, which stated in part:

> Enclosed is the By-laws and other necessary documents. If you have any questions please give me a call. It will be necessary to complete the following.
> 1. Obtain a corporate seal.
> 2. Obtain a desired specimen of stock and insert it in front of the documents entitled, "RESOLUTION FOR AUTHORIZATION OF CORPORATE LOAN(S)."
> 3. Obtain a book of choice to hold these documents.
> 4. *Have these documents reviewed by your attorney* and have his name as corporate counsel inserted into the proper location on the form titled, "CONSENT TO ACTION TAKEN IN LIEU OF ORGANIZATION MEETING," page, consent 1.

(Emphasis added.)

The record in this case clearly demonstrates that Mr. Day was preparing documents that were to be reviewed by an attorney and that appellants needed to discuss all legal ramifications of the corporation with an attorney. Appellee told appellant Mary Knight to have his work reviewed by an attorney, and presented Ms. Knight with the names of attorneys. Accordingly, we hold that the

trial court did not clearly err when it found that appellants failed to prove fraud, constructive or otherwise.

For the above-stated reasons, we affirm the trial court's dismissal of appellants' complaint for fraud and misrepresentation. However, given that the circumstances of this case involve allegations of the unauthorized practice of law, we hereby direct the Clerk to forward a copy of this opinion to the Arkansas Supreme Court Committee on the Unauthorized Practice of Law.

Affirmed.

GLAZE, J., dissents.

TOM GLAZE, Justice, dissenting. Appellee William Day's decision to represent appellant Mary Knight in structuring her counseling business constituted constructive fraud which caused Knight damages. For these reasons, I dissent from the majority court's decision.

The pertinent facts are the following: Mary Knight is a licensed certified social worker (L.C.S.W.), which requires a masters degree. She performed her services as Knight Counseling, Inc., a professional limited liability company (PLLC). When Knight became concerned that she might lose her contract with the state unless she had a corporation, Knight hired Day, an accountant, for advice. Knight also was bringing Brenda Baker, a licensed social worker (LSW), into Knight's business, so she voiced her concern over whether Baker should be made an owner or partner in the business since Baker was not a L.C.S.W. Knight told Day that Baker was a good friend, and she wanted Baker to own 50% of the corporation, and after discussing these matters, Day determined it would be "okay" to make Baker a 50% owner and shareholder of the corporation; he told Knight that he could set up her business that way. Day then proceeded to prepare a dissolution for Knight's existing PLLC and prepared corporate documents establishing the business as a Subchapter S corporation. In doing so, Day prepared the articles of incorporation, consent to action taken in lieu of an organizational meeting, by-laws, and other related documents.

Although Day averred he told Knight that the corporate documents would need to be reviewed by an attorney, he conceded that he did not prepare any documents for an attorney to review. As

found by the trial court, while an attorney would need to prepare and file such documents, Day did so instead. Most important, Day admitted that, without speaking to an attorney or researching the issue, he decided Baker's license legally allowed her to be a shareholder and owner in the new Subchapter S corporation. Day testified as follows:

> *I made the determination that [Baker's] license was good enough even though it was not equal to [Knight's] and I did not talk to a lawyer about it before I made that determination. I knew at the time that I was making the determination* that the license was not going to be a problem, *that I was dealing with the rules and regulations of the Arkansas Social Worker's Board and the statutes in Arkansas* governing the Arkansas Social Worker's Board, *and that I was dealing with the corporate laws in the State of Arkansas and how all those things meshed together.*
>
> One of the reasons for setting [Knight] up as [a] Subchapter S corporation was because she could be paid only a part of her income at a level acceptable to the Internal Revenue Service, as wages, and over and above those wages the company could pay money out as dividends and she would not have to pay FICA, because a sole proprietor pays both ends of FICA and that is 15.3 percent. (Emphasis added.)

Interestingly, Day concluded that he based his decision to include Baker as an owner in the Subchapter S corporation on one of his client's opinion that Baker's licensure would allow her to be a part of a corporation.[1] Day further conceded that he did not tell Knight to discuss this issue with an attorney, but instead said, "I had already talked to a counselor, and I had been around corporations, and I had talked to other accountants and I thought it would be okay." In other words, Day held himself out as having the expertise to make such a decision.

The foregoing evidence reflects that Day not only erroneously informed Knight that it was legally permissible for Baker to be an owner/shareholder of Knight's newly incorporated Subchapter S counseling business, but Day also prepared and filed the corporate documents to include Baker as an owner/shareholder. As he stated, he did not talk with or send Knight to an attorney regarding this legal issue. In fact, the trial court found that Day made the misrep-

---

[1] Day had a client who apparently was a counselor, and after a telephone conversation with that client, he decided that Baker could be a shareholder.

resentation that Baker's license posed no problem based solely on calling and speaking to his client, who was a counselor.

After having heard the testimony presented by Knight, the trial court considered and denied Day's directed-verdict motion to dismiss Knight's fraud claim. Day claimed no fraud occurred, because Day never represented to Knight that he was an attorney. Knight's counsel responded with the following argument:

> The fraud does not have to be malicious. You can have constructive fraud when the person knew or should have known that they were doing something wrong, and in this case he knew or should have known he was doing something wrong. In fact he testified "I [Day] have had lots of opportunities to do these things and I send them away because attorneys need to do that."

> Well he is right, attorneys do need to do that. But in this case he decided to prepare all of these documents and file the documents.

> The second misrepresentation is also the unauthorized practice of law, and . . . *more severe is the misrepresentation that the licensure was okay, that the difference between the licensure levels of the parties was okay. Mr. Day made that determination not with the review of the statute, not with review of the regulations of the social work committee, he made that determination by calling a client.* (Emphasis added.)

After Knight's response, the court again denied Day's directed-verdict motion. Following that ruling, witnesses were then called by Day. Dan Downey, an accountant, testified that he did not find any problems with the work Day prepared, and that if Day prepared Knight's corporate documents and told her to have an attorney review them, Downing "saw nothing wrong with that." However, Downey explained further that it was not proper for an accountant to interpret Arkansas law with regard to who could be a shareholder in a corporation — that an attorney's opinion is required on that issue.

Day next called Baker as a witness, and among other things, Baker said that Day told her it was all right for her to be a shareholder in Knight's corporation, and also related the following:

> I had informed Mr. Day that I could not be an owner. I personally told Mr. Day that I only found out later *that Mr. Day had set me up as a shareholder and he did tell me that it was alright [sic] to do*

*it this way.* I remember going to Mr. Day's house, I ran a lot of errands and picked up a lot of papers, and on one occasion, Mr. Day and I talked about it, and I reminded him that I could not be an owner because of my licensure. And he said, why does [Knight] keep telling me, keep bringing this up to me over and over, and I said we both want to be very clear that I cannot be an owner in any way as I had stated in a letter that I turned in a year ago. He said, well as a shareholder, you're not taxed as much as you should be, that is why I am doing it this way, and *I know what I am doing.* So I assumed that he did. (Emphasis added.)

At the end of the trial, the trial judge made the following findings before holding that Knight failed to prove her claims:

According to the issue of fraud and deceit I had a hard time not granting the directed verdict [earlier] because in my opinion there was a lack of evidence concerning a fraudulent misrepresentation of a fact that [Day] knew or should have known was false. [Day] told her he was not a lawyer and she knew that he was not a lawyer. He gave them names of two lawyers to call and she calls one and chooses not to go in and she sees [attorney] Mr. Bond and doesn't have him review all of the papers and see that he [Day] has committed fraud. If this is the unauthorized practice of law, then we need to have the committee, there's a committee that studies those things in the legal profession and let's fight it out down there. But *your burden is to convince me that [Day] committed fraud or misrepresentation of fact.* I don't find that occurred and she [Knight] has to have justifiably relied on a misrepresentation. Again, [Day] has given her all kinds of opportunities to talk to lawyers, and if she chooses not to, I think she's hard-pressed to come in this court and say, "Judge, he pulled the wool over my eyes and he duped me and I didn't have any idea that I was getting ready to be taken to the cleaners because of his actions." And that's just not the facts the case show. For the reasons stated, it's going to be my finding that Knight has failed on her complaint . . . for fraud and misrepresentation . . . .

The trial judge was wrong. Knight's case against Day does not rise or fall only on the fact that Knight knew Day was not an attorney or because Knight did not avail herself of the opportunity to see an attorney. As mentioned above, Day held himself out as a person who knew what he was doing when incorporating Knight's business and assuring Baker and Knight that it was all right to make Baker a shareholder. Day clearly told Baker, "I know what I am doing." He asserted Baker could be made a shareholder/owner of

Knight's newly incorporated Subchapter S venture, but that representation was indisputably false, causing Knight to sustain damages.

In reading the trial judge's remarks at the end of trial, it is abundantly clear that he only found the five elements of the tort of deceit were not proved and never mentioned constructive fraud, which Knight alleged, argued, and proved.[2] In particular, the judge found Knight had failed to justifiably rely on a misrepresentation because Day gave Knight opportunities to talk to lawyers. However, it is not necessary that actual fraud exist to state a cause of action; it is sufficient if constructive fraud exists. *See Roach v. Concord Boat Corp.*, 317 Ark. 474, 880 S.W.2d 305 (1994). This court has held many times that there may be constructive fraud, or fraud in the law, even when there is a complete absence of any moral wrong or evil intention. *Id.* It is also well settled that representations are construed as fraudulent when they are made by someone who, unaware of their falsity, asserts them to be true. *Id.* That is exactly what happened in the instant case.

Aside from whether or not Day gave Knight an opportunity to contact an attorney, Day very clearly and erroneously advised both Knight and Baker that Baker could become an owner/shareholder of Knight's newly incorporated Subchapter S business. Such a misrepresentation of these facts proved to be untrue and constituted constructive fraud. Moreover, Day acted on this material misrepresentation by preparing and filing the documents required to make Baker an owner in Knight's corporation. Certainly, since Day was convinced that his actions were proper and lawful in making Baker an owner of Knight's corporate business, Knight was surely more than justified in relying on Day's representations.

In conclusion, the majority opinion, where it states Knight did not make a false representation of fact, is wrong. As set out above, Day repeatedly represented that Baker could be a shareholder in a Subchapter S corporation when, in fact and law, she could not. This misrepresentation, even if believed true by Day, constituted

---

[2] We have held that five elements establish the tort of deceit: a false representation of a material fact; knowledge or belief on the part of the person making the representation that the representation is false or that there is not sufficient basis of information to make such a representation; an intent to induce the other party to act or refrain from acting in reliance upon the misrepresentation; a justifiable reliance upon the representation by the other party in taking action; and resulting damages. *See Nicholson v. Century 21*, 307 Ark. 161, 818 S.W.2d 254 (1991).

constructive fraud and caused Knight to incur accounting fees in damages to correct her business structure and to remedy her situation with the Internal Revenue Service, which has questioned the taxes she paid (or did not pay) as an incorporated Subchapter S company.[3] In alleging constructive fraud and seeking compensatory damages, Knight also requested punitive damages, to which she would be entitled upon proving her case for compensatory damages.

For the above reasons, I would reverse and remand the trial court's decision.

---

[3] Jack Lee Bottoms, a certified public accountant (CPA), testified he had to review and correct the 1995 tax returns and the IRS was questioning the structure of Knight's business. Her bill was $250.00 and there was a balance of a $950.00 fee. He also had an amount in the sum of $820.00 due in connection with his work regarding the IRS inquiry.