AMERICAN ABSTRACT AND TITLE COMPANY
and Robert E. Adkins  *v.*  George and Alfreda RICE

03-754                                          186 S.W.3d 705

Supreme Court of Arkansas
Opinion delivered June 17, 2004

*Dover Dixon Horne PLLC*, by: *Mark H. Allison*, for appellants.

*Nichols & Campbell, P.A.*, by: *H. Gregory Campbell* and *Mark W. Nichols*; *Roberts Law Firm*, by: *Robert A. Russell, Jr.*, and *Matthew C. Hutsell*; and *Thrash Law Firm*, by: *Thomas P. Thrash*, for appellees.

Tom Glaze, Justice. This appeal initially requires us to determine whether a circuit court has jurisdiction to consider a complaint that raises questions concerning the unauthorized practice of law. We are also presented with a question concerning the sufficiency of the trial court's order certifying the matter as a class action.

The appellees in this case are George and Alfreda Rice, who purchased a home in Little Rock in June of 1999. Appellant American Abstract & Title Company ("American") acted as the settlement and escrow agent for the sale. The Rices filed a complaint against American and its CEO, Robert Adkins, alleging that American had engaged in the unauthorized practice of law and had violated provisions of the Arkansas Deceptive Trade Practices Act. The Rices also moved to certify the matter as a class action, seeking to name as class members "all persons who paid document

preparation fees for the preparation of legal documents such as deeds, mortgages, and notes; who paid a settlement or closing [fee]; and/or who had money held in escrow by American that earned interest."

American objected to the case being certified as a class action, contending that the Rices had not made the requisite showings under Ark. R. Civ. P. 23. In addition, American alleged that the trial court did not have jurisdiction to decide "a critical threshold question — i.e., whether [American's] conduct constitutes the unauthorized practice of law." This was so, American argued, because jurisdiction to define and regulate the practice of law is vested in this court and the Supreme Court Committee on the Unauthorized Practice of Law ("CUPL," or "the Committee").

After a hearing, on April 7, 2003, the Pulaski County Circuit Court entered findings of fact and conclusions of law, and certified the following class of persons: "All persons who paid American Abstract a document preparation fee, a closing fee and/or had money in American Abstract's escrow account since May 30, 1997." From that order, American has appealed, raising the following two arguments: 1) the trial court did not have subject-matter jurisdiction to determine whether American engaged in the unauthorized practice of law; and 2) the trial court's class certification order is not sufficient.

We first address American's argument that the trial court lacked jurisdiction to determine whether it engaged in the unauthorized practice of law. American contends that the sole body before whom such issues can be raised is the Committee. American bases its argument on Ark. Const. amend. 28, enacted by the people on November 8, 1938. Amendment 28 provides that "[t]he Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law."

On December 18, 1978, this court issued a *per curiam* opinion whereby it established the Supreme Court Committee on the Unauthorized Practice of Law. *See Rule of Court Creating a Committee on the Unauthorized Practice of Law*, 264 Ark. Appx. 960 (1978) (*per curiam*). In that opinion, this court stated the following:

> The Constitution and laws of this state vest in the Supreme Court the duty and authority to regulate the practice of law and to prohibit the unauthorized practice of law. Pursuant thereto, the

> following rule is adopted to become effective as of February 1, 1979, and shall apply to all complaints of and matters or inquiries dealing with the unauthorized practice of law.

Under this order, the Rules of the CUPL provide that "[a]ll inquiries and complaints relating to the unauthorized practice of law shall be directed to the Committee, in writing, through the Administrative Office of the Courts." *See* Rule IIIa of the Rules of Court Creating a Committee on the Unauthorized Practice of Law (hereinafter "Rules").

American contends that this language gives CUPL exclusive jurisdiction to consider any and all matters pertaining to the unauthorized practice of law. The Rices respond that they never asked the trial court to declare that American was engaging in the unauthorized practice of law; instead, their complaint alleged that American's conduct was false and constituted deceptive trade practices in violation of Ark. Code Ann. § 4-88-101, *et seq.* (Repl. 2001), the Arkansas Deceptive Trade Practices Act.

We do not agree with American that the CUPL has exclusive jurisdiction over matters such as this one. The rules of this court creating the CUPL make it plain that, while the Committee is vested with the authority to investigate claims relating to the unauthorized practice of law, nevertheless, the CUPL itself has no power to *enforce* whatever decision it may reach regarding any given investigation. For example, Rule III provides that "[a]ll inquiries and complaints relating to the unauthorized practice of law shall be directed to the Committee, in writing, through the Administrative Office of the Courts." When the CUPL receives such an inquiry or complaint, it *may* make a determination that the action or course of conduct does or does not constitute unauthorized practice of law. *See* Rule IIIa (emphasis added). Moreover, Rule IIIc provides that, in the event the CUPL issues an *advisory opinion* in which it makes a finding that someone has engaged in the unauthorized practice of law, it "*may* bring an action or actions in the proper court[s] seeking to enjoin that conduct deemed to constitute unauthorized practice of law[.]" (Emphasis added.)

The Appendix to these Rules further clarifies that any remedial action the CUPL might take is purely discretionary, rather than mandatory. The Appendix to Rule 7 notes that, under Rule IIIc, the Committee "*may* seek injunctive relief in the

appropriate court[s] if issuance of the advisory opinion does not result in cessation of those acts or course of conduct the Committee has pronounced to be the unauthorized practice of law." (Emphasis added.) Plainly, the CUPL is without either the authority or the ability to take any affirmative action on its own — other than issuing a nonbinding advisory opinion — to see to it that a party ceases engaging in the unauthorized practice of law. Without this ability to enforce its own rules, the Committee clearly cannot be vested with *exclusive* jurisdiction to consider allegations that a person or entity has engaged in the unauthorized practice of law. In other words, CUPL does not have the authority to enforce its opinions without filing a complaint in circuit court, where it can obtain a declaration finding a person is unlawfully practicing law and an injunction to force that person to stop the unauthorized practice. The CUPL, at most, shares jurisdiction in these matters; most certainly, the Committee does not have *exclusive* authority in these matters.

We further point out that, over the years, this court has decided numerous cases involving the unauthorized practice of law, without mentioning the CUPL or deciding whether the trial court that heard the case was without jurisdiction to have done so. In *Lenders Title Co. v. Chandler*, 353 Ark. 339, 107 S.W.3d 157 (2003), this court determined that the trial court's class certification order was insufficient, and remanded the matter to the circuit court. Certainly, if the circuit court did not have jurisdiction to consider the same issues in *Lenders*, this court would have remanded the case to the CUPL, but instead, we sent it back to the trial court.

Likewise, in *Knight v. Day*, 343 Ark. 402, 36 S.W.3d 300 (2001), this court held that an accountant did not commit constructive fraud by engaging in the unauthorized practice of law, affirming the trial court's ruling to that effect without ever mentioning that the trial court did not have jurisdiction to make that determination in the first place. Rather, the court simply noted, at the conclusion of the opinion, that because "the circumstances of this case involve allegations of the unauthorized practice of law, we hereby direct the Clerk to forward a copy of this opinion" to the CUPL. *Knight*, 343 Ark. at 408. Similarly, in *Smith v. National Cashflow Systems, Inc.*, 309 Ark. 101, 827 S.W.2d 146 (1992), this court reviewed and affirmed a determination by the trial court that the actions of appellee National Cashflow Systems

did not constitute the unauthorized practice of law, without considering or declaring that the trial court had no jurisdiction to make such a determination.

■ If the CUPL had exclusive subject-matter jurisdiction to consider whether the parties in these cases were engaging in the unauthorized practice of law, this court would have at least mentioned it, since subject-matter jurisdiction is an issue that can be raised *sua sponte*. *See e.g., Skelton v. City of Atkins*, 317 Ark. 28, 875 S.W.2d 504 (1994); *Head v. Caddo Hills School District*, 277 Ark. 482, 644 S.W.2d 246 (1982); *Bratcher v. Bratcher*, 36 Ark. App. 206, 821 S.W.2d 481 (1991) (subject-matter jurisdiction is always open, cannot be waived, and can be raised by this court *sua sponte*). Therefore, we reject American's argument that the trial court did not have jurisdiction to consider the Rices' claims regarding American's alleged unauthorized practice of law.

■ We now turn to the American's second point for reversal: the trial court's order certifying the class in this case was not sufficient. Rule 23 of the Arkansas Rules of Civil Procedure details the requirements for a class–action suit. It states:

> (a) One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

> (b) An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this section may be conditional and it may be altered or amended before the decision on the merits.

*See also BPS Inc. v. Richardson*, 341 Ark. 834, 20 S.W.3d 403 (2000). We have reviewed the provisions of Rule 23 on numerous occasions and have held that, in order for a class–action suit to be certified, six

factors must be met. Specifically, the party seeking certification must establish: (1) numerosity; (2) commonality; (3) typicality; (4) adequacy; (5) predominance; and (6) superiority. *Id.; see also Mega Life & Health Ins. v. Jacola*, 330 Ark. 261, 954 S.W.2d 898 (1997).

When we review a class-action certification, we will review the trial court's analysis of the factors upon which certification must be based. Specifically, we have held that the issue of whether to certify a class is not determined by whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. BPS, *supra*. We have also observed that it is totally immaterial whether the petition will succeed on the merits or even if it states a cause of action. *See BNL Equity Corp. v. Pearson*, 340 Ark. 351, 10 S.W.3d 838 (2000). An order denying or granting class certification is separate from the merits of the case. *Direct Gen. Ins. Co. v. Lane*, 328 Ark. 476, 944 S.W.2d 528 (1997) (citing *Farm Bureau Mutual Ins. Co. v. Farm Bureau Policy Holders*, 323 Ark. 706, 918 S.W.2d 129 (1996)). Although we do not delve into the merits of the underlying claims in a potential class-action case, we will review the trial court's order to determine whether the requirements of Rule 23 are satisfied. BPS, *supra*.

In this appeal, American challenges only three of the six Rule 23 requirements; therefore, we need not address or consider the other three requirements — numerosity, commonality, and typicality — here. We are left with only the remaining three requirements: predominance, superiority, and adequacy. With respect to the predominance requirement, the trial court found that the "mere fact that individual issues and defenses may be raised regarding the recovery of individual members cannot defeat class certification where there are common questions concerning American Abstract's alleged wrongdoing which must be resolved for all class members." The court further found that a common wrong had been alleged against American, and that the common issues predominated over any individual issues that might arise. American contends that the trial court erred, because there are "individual issues of reliance and damages, and whether each class member sought legal advice, and whether in each case American Abstract gave legal advice would outweigh the common issues."

The trial court did not abuse its discretion in concluding that the predominance requirement of Rule 23(b) had been satisfied. This court has held that the starting point in examining

the predominance issue is "whether a common wrong has been alleged against" the defendant. *See USA Check Cashers of Little Rock v. Island*, 349 Ark. 518, 76 S.W.3d 243 (2002); BPS, *supra*. Here, the "common wrong" is the allegation that American violated the Arkansas Deceptive Trade Practices Act by the way it handled and charged document fees and closing fees; this alleged wrong is common to every member of the class.

■ Before leaving this issue, we must consider "whether this question predominates over individual questions." BPS, 341 Ark. at 845. American argues that the individual questions, rather than the common questions, predominate; for example, it claims that, with respect to the question of interest earned on American's escrow account, it would have to be determined whether any interest was earned at all on each particular class member's funds that were deposited into the escrow account. However, there are still common issues to every member of the class. In *Mega Life*, this court pointed out that it has approved the use of a "bifurcated process" when, even though there are fundamentally common questions that pertain to all class members, there are certain issues, such as damages, that may not be amenable to class-wide determination. *See also Summons v. Missouri Pac. R.R.*, *supra* (affirming a class action of plaintiffs who claimed a variety of highly individualized damages, but which damages were occasioned by a single accident; common question of the railroad's negligence and the existence of strict liability predominated over individual issues of causation and the extent of damages). Because the preliminary, common issues can be resolved before any individual issues in this case, the predominance element has been satisfied. *See Fraley v. Williams Ford Tractor & Equip. Co.*, 339 Ark. 322, 5 S.W.3d 423 (1999).

American next argues that the trial court erred in finding that a class action would be superior to other available methods for the fair and efficient adjudication of the controversy. With respect to this requirement, the trial court found that, during the time period at issue, American had handled "in excess of 10,000 real estate closings and routinely charge[d] document preparation fees, closing fees, and retain[ed] interest on escrow accounts. It is fair to both sides and the most efficient way of handling the common issues of law and fact by resolving them in the form of a class action. It is also efficient and fair to both sides to avoid a multiplicity of lawsuits."

On appeal, American argues that this finding fails, because the trial court did not even address its argument that the CUPL would be a better forum for resolving the issues raised by the Rices, nor did the court explain why resolution of the case in circuit court would be superior to proceeding before the Committee. However, in addition to whether American engaged in the unauthorized practice of law, the issue raised by the Rices is whether American violated the Deceptive Trade Practices Act. This is not a question that the CUPL is equipped to answer. Therefore, the trial court's failure to address this particular question is not in error.

American also argues that the court's certification order suffers from the same infirmity that this court held fatal in *Lenders Title*. In that case, this court rejected as insufficient the finding that "[t]he common issues raised in the Plaintiff's complaint would predominate throughout the class and a class action is the superior method with which to address the issues raised in this case." *Lenders Title*, 353 Ark. at 347. Here, however, the trial court's conclusion with respect to superiority is significantly more detailed than the finding in *Lenders Title*. This court has held that the superiority requirement is satisfied if class certification is a more efficient way of handling the case, and it is fair to both sides. *USA Check Cashers v. Island, supra*. In that same case, this court also noted that the "avoidance of a multitude of suits lies at the heart of any class action certification." *Id*. at 82. Unlike the trial court's order in *Lenders Title*, which stated bare conclusions without supporting facts, the court's order here sets out a reasoned explanation for why a class action is appropriate. Specifically, the trial court found that a class action would avoid a multiplicity of suits, given the fact that American had handled "in excess of 10,000 real estate closings" in the time frame covered by this suit. Therefore, American's reliance on *Lenders Title*, for its argument that the trial court's order is insufficient, is unavailing.

Finally, American challenges the trial court's findings with respect to adequacy. The adequacy requirements of Rule 23(a)(4) were described by this court in *USA Check Cashers, Inc. v. Island, supra*, as follows:

> [T]he requirement of adequacy . . . specifically states that the "representative parties will fairly and adequately protect the inter-

ests of the class." Ark. R. Civ. P. 23(a)(4). This court has previously interpreted Rule 23(a)(4) to require three elements:

> (1) the representative counsel must be qualified, experienced and generally able to conduct the litigation; (2) that there be no evidence of collusion or conflicting interest between the representative and the class; and (3) the representative must display some minimal level of interest in the action, familiarity with the practices challenged, and ability to assist in decision making as to the conduct of the litigation.

*USA Check Cashers*, 349 Ark. at 79-80 (citing *Mega Life, supra*; *Direct Gen. Ins. Co. v. Lane, supra*).

American challenges whether the Rices were adequate class representatives, because they failed to appear and testify at the class certification hearing; further, American asserts that the Rices might have a conflict of interest with other potential class members who would be entitled to a share of the interest earned on American's escrow accounts. American claims the trial court did not analyze these issues, and that it therefore abused its discretion in entering its order.

However, the order specifically states that "there is no evidence of collusion or conflicting interests between the representative named plaintiffs and members of the class"; that the "named plaintiffs have displayed a significant level of interest in this action and have the ability to assist in decision making as to the conduct of the litigation"; and that the Rices had given depositions in the case and had communicated with class counsel. These findings not only address the issues raised by American on appeal, but they also satisfy the requirements of Rule 23(a)(4).

Because the trial court had jurisdiction to hear and consider this complaint, and because the class-certification order is sufficient, we affirm.

THORNTON, J., dissents.

HANNAH, J., not participating.

RAY THORNTON, Justice, dissenting. Because I believe that "the Constitution and laws of this state vest in the Supreme Court the duty and authority to regulate the practice of law and to prohibit the unauthorized practice of law," and because the

court adopted a rule creating a Committee on the Unauthorized Practice of Law delegating to that committee authority over "all complaints of and matters or inquiries dealing with the unauthorized practice of law,"[1] I respectfully dissent.

While the duty and authority to regulate the practice of law is inherent in our 1874 Constitution, it is specifically set out in Amendment 28 to the Constitution. The full text of that amendment reads:

> The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law.

*Id.* In addition, prior to the adoption of Amendment 28, the General Assembly had passed a number of legislative enactments including, among many subjects, legislation to establish standards for admission to the practice of law, calling for the appointment of a Board of Law Examiners, prohibiting individual judges from conferring admission to the bar, and legislation prescribing rules for disbarment, suspension, and discipline of attorneys. For examples, *see* Ark. Code Ann. § 16-22-201 through 206 (Repl. 1999) and § 16-22-401 through 414 (Repl. 1999).

Amendment 28 clearly vested exclusive power to regulate the practice of law in the supreme court, but those statutory provisions that did not conflict with the court's exclusive duty and authority were allowed to continue to exist. In *McKenzie v. Burris,* 255 Ark. 330, 500 S.W.2d 357 (1973), this court stated that its power under Amendment 28 to regulate the practice of law is "supreme and exclusive." *Id.*

The grant of authority to the Committee on the Unauthorized Practice of Law is similar to that exercised by the Committee on Professional Conduct. This court has held that the Committee on Professional Conduct, in exercising its authority, has clearly pre-empted litigation in trial courts aimed at regulating professional conduct. *See Myers v. Mauss,* 281 Ark. 188, 662 S.W.2d 805 (1984); *Davis v. Merritt,* 252 Ark. 659, 480 S.W.2d 924 (1972) (holding that the chancery court did not have jurisdiction to form a committee of local attorneys to act on charges of professional conduct).

---

[1] Both quotations are promulgated in the first paragraph of this court's *per curiam* 78-11 of December 18, 1978, establishing the Committee on the Unauthorized Practice of Law.

Before the Committee on the Unauthorized Practice of Law ("the Committee") was created in 1978, I note that a number of efforts to define and regulate the unlawful practice of law had been announced and then modified or abandoned.

In 1959, our court ruled in *Ark. Bar. Ass'n v. Block*, 230 Ark. 430, 323 S.W.2d 912 (1959), that the use, without the services of an attorney, of twenty-five printed forms having to do with property transactions, including such forms as agreements for the sale of real estate, warranty deeds, declarations of forfeiture, promissory notes, bills of sale, assignments of leases and rentals, and pledges of personal property, by means of printed forms was prohibited as an unauthorized practice of law. The use of one such instrument was considered to not be an unauthorized practice of law in *Block, supra*, namely, offers and acceptances.

The holding in *Block, supra*, did not last long. In *Block v. Ark. Bar Ass'n*, 233 Ark. 516, 345 S.W.2d 471 (1961), this court allowed the trial court to modify an injunction with respect to preparations of the forms for loan applications, and *Creekmore v. Izard*, 236 Ark. 558, 367 S.W.2d 416 (1963), emasculated *Block*. The court in *Creekmore* pointed out that many towns in Arkansas did not have a resident lawyer and held that a real estate broker may, where his customer declines to employ a lawyer, be permitted to fill in the blanks in printed standardized real estate forms, arising in the usual course of the broker's business where the printed form had been approved by a lawyer. *Id.*

The dissent in *Creekmore* called for the court to exercise the exclusive authority granted by Amendment 28 to "make rules regulating the practice of law . . . [.]" *Id.*

However, as this court pointed out in *Pope County Bar Ass'n v. Suggs*, 274 Ark. 250, 624 S.W.2d 828 (1981), public policy considerations raise issues of the best interest of the public that should not be resolved simply on the basis of whether the filling out of these simple forms constitutes the unauthorized practice of law, but rather upon consideration of whether it is in the best interest of the public to allow the practice to continue. We stated in *Pope County Bar Ass'n, supra*,

> The ultimate issue . . . is not so much whether realtors are practicing law when filling out these routine forms, but whether it is in the best interest of the public to allow them to do so . . . we feel that to grant the injunctive relief requested, thereby denying the public the

right to conduct real estate transactions in the manner in which they have been transacted for over half a century, with apparent satisfaction, and *requiring all such transactions to be conducted through lawyers, would not be in the public interest.*

*Id.* (Emphasis added).

The determination of this question called for exercise of the supreme court's exclusive authority to define and regulate the unauthorized practice of law, and the Committee was created by the court for the purpose of exercising that jurisdiction over issues relating to the unauthorized practice of law. In order to address public policy considerations, the Committee was composed of four lawyers and three public members who are not lawyers.

On December 18, 1978, this court delegated and conferred all its jurisdiction and authority to the Committee as follows:

> III.  All inquiries and complaints relating to the unauthorized practice of law shall be directed to the committee, in writing, through the Clerk of the Arkansas Supreme Court.

Rules of Court Creating a Committee on the Unauthorized Practice of Law, 264 Ark. Appendix 960 (1978). In my view, nothing could be more clearly expressed. The Committee was granted exclusive jurisdiction to define the unauthorized practice of law, to conduct hearings, issue subpoenas, render decisions, and to enforce its decisions.

More specifically, our case law supports my view. This court has repeatedly stated that Amendment 28 vested exclusive authority to regulate the profession and practice of law in this court. *In re Anderson*, 312 Ark. 447, 851 S.W.2d 408 (1993); *Ark. Bar Ass'n v. Union Nat'l Bank*, 230 Ark. 430, 323 S.W.2d 912 (1954); *see also McKenzie, supra.*

Rule III of the Rules of Court Creating a Committee on the Unauthorized Practice of Law has been revised to now read as follows:

> *All* inquiries and complaints *relating to* the unauthorized practice of law *shall be directed* to the Committee, in writing, through the Administrative Office of the Courts.

R. Com. Un. Prac. L. III (2004) (emphasis added). The plain language of the rule is mandatory. Every complaint relating to the

unauthorized practice of law "shall be directed" to the Committee on the Unauthorized Practice of Law. *Id.* That Committee may then determine whether an unauthorized practice of law has occurred and take what action is appropriate to advance the public interest in accordance with our holding in *Pope County Bar Ass'n, supra.* For example, the Committee may issue an advisory opinion on the matter and, if needed, pursue injunctive relief against parties engaging in the unauthorized practice of law. *Id.* The Committee is an administrative body with investigatory and evidence gathering powers similar to the Committee on Professional Conduct, *see Sexton v. Ark. Sup. Ct. Comm. On Prof. Cond.*, 299 Ark. 439, 774 S.W.2d 114 (1989), and the Client Security Fund, *see Nosal v. Neal*, 318 Ark. 727, 888 S.W.2d 634 (1994). It can subpoena individuals and documents, and a violation of such a subpoena is treated as contempt of our court. R. Com. Un. Prac. L. II. The unauthorized practice of law may also constitute contempt of court under Ark. Code Ann. § 16-22-209 (Supp. 2004) and can be prosecuted as any other contempt of court offense.

I think it is untenable to reach any conclusion other than the following: The trial court lacks subject-matter jurisdiction to define and regulate the unauthorized practice of law or to proceed with a class action based upon a complaint relating to the unauthorized practice of law. This court has ordered that all issues relating to the unauthorized practice of law must be directed to the Committee.

For all of these reasons, I respectfully dissent.