*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| GREGORY T. ERKINS, | ) | |
| | ) | Supreme Court No. S-15297 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-08-09144 CI |
| v. | ) | |
| | ) | O P I N I O N |
| ALASKA TRUSTEE, LLC, | ) | |
| BANK OF NEW YORK | ) | No. 7025 – July 31, 2015 |
| TRUST COMPANY, N.A., and | ) | |
| JP MORGAN CHASE BANK, N.A., | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, John Suddock, Judge.

Appearances: Gregory T. Erkins, pro se, Anchorage, Appellant. Nelson G. Page, Burr, Pease & Kurtz, Anchorage, for Appellees.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

STOWERS, Justice.

I.      INTRODUCTION

This is the second appeal filed by the debtor in this foreclosure case. The debtor alleges that he was incapacitated when he entered into the loan contract and attempted to use this defense against a bank that was a subsequent purchaser of the note. In the first appeal we held that summary judgment had been improperly granted to the

bank.[1] On remand, the superior court granted summary judgment on different grounds, concluding that the bank was a holder in due course and thus immune from the debtor's incapacity defense. We agree with the superior court and affirm.

## II. FACTS AND PROCEEDINGS

Because this is our second time reviewing the facts of this case, we confine our discussion to the facts relevant to this appeal.

In March 2000 Gregory T. Erkins was injured in an automobile accident and began taking strong pain medication. Erkins continued working sporadically while he was taking the medication. In early October 2004 Erkins obtained an $80,000 loan from Ameriquest secured by a deed of trust on a property he owned in Anchorage. This loan carried monthly payments of around $500. Erkins negotiated the terms of this loan and signed the paperwork from his home — he was allegedly "unable to drive because of [the] pain medication." Approximately four months later, in 2005, Erkins obtained a second loan on the property, also from Ameriquest, this time in the amount of $142,477. Erkins alleges he was told that payments would remain around $500 per month, but the second loan actually carried monthly payments of $962.30. The deed of trust for the second loan was recorded in March 2005. Erkins used part of the proceeds from the second loan to pay off the first loan.

JPMorgan Chase Bank, N.A. purchased the loan in February 2005. JPMorgan's records reflect that the note was endorsed to JPMorgan as trustee, and physical possession of the note was also transferred at that time. A document titled "Assignment of Deed of Trust" reflects an assignment from Ameriquest to the Bank of New York Trust Company, N.A. as successor to JPMorgan and is dated

---

[1]       *Erkins v. Alaska Tr., LLC*, 265 P.3d 292, 294, 300 (Alaska 2011) (*Erkins I*).

February 28, 2005, but was not recorded until November 29, 2007, nearly three years later. An assistant vice president for Wilshire Credit Corporation, the entity that serviced the loan for Bank of New York, declared in an affidavit that the loan was current when Wilshire began servicing it for Bank of New York in August 2005.

Erkins paid his monthly payments in full and on time from the first payment in April 2005 until January 2007, when Wilshire notified Erkins that one of his checks had bounced. Erkins refused to make any more payments until Wilshire lowered his payments to $500. When Wilshire declined to do so, Erkins stopped making regular payments. He continued making sporadic payments until July 2007, at which point he stopped altogether. After the loan fell into delinquency, Bank of New York initiated foreclosure proceedings.

In July 2008 Erkins filed suit against Alaska Trustee, LLC, Bank of New York, and JPMorgan[2] in the superior court, alleging fraud and misrepresentation, among other claims. In October, Bank of New York presented an offer to Erkins in the form of a "proposed forbearance agreement," which provided that it would stay the pending foreclosure proceedings if Erkins met certain conditions.[3] Erkins signed the forbearance agreement. Bank of New York moved for summary judgment, arguing that Erkins had waived his claims through a clause in the forbearance agreement. The superior court granted summary judgment, ruling "that defendants [were] not liable for

---

**2**       We refer to these parties collectively as "Bank of New York" for convenience. Although Alaska Trustee is listed in the case caption, Erkins's claims center around Bank of New York and the enforceability of the note. Alaska Trustee was the trustee during the non-judicial foreclosure of Erkins's home.

**3**       The foreclosure sale eventually occurred, but the date of the sale is not in the record. Bank of New York now holds title.

any tort of Ameriquest" and that Erkins "released his claims in . . . the forbearance agreement."

Erkins appealed, and we reversed in part, holding that although the superior court did not err in concluding that the "defendants could not be held liable for the alleged torts of Ameriquest," it had erred in granting summary judgment based on the forbearance agreement.[4] We remanded for further proceedings.[5]

On remand Bank of New York deposed Erkins. It again moved for summary judgment, submitting more evidence relating to the assignment of the note. Bank of New York expressly disavowed reliance on the forbearance agreement, which was the basis of its earlier summary judgment motion. Instead, Bank of New York argued that it was a holder in due course and not subject to Erkins's incapacity defense. The superior court agreed and again granted summary judgment, concluding that Bank of New York was a holder in due course and immune from any incapacity defense that Erkins might have. Erkins appeals, proceeding pro se.

## III. STANDARD OF REVIEW

"We review the grant of a summary judgment motion de novo, affirming if the record presents no genuine issue of material fact and if the movant is entitled to judgment as a matter of law. All reasonable inferences are drawn in favor of the nonmovant in this examination."[6] But in order to survive summary judgment, the nonmoving party must do more than "rest upon the mere allegations or denials of [his]

---

[4]    *Erkins I*, 265 P.3d at 294.

[5]    *Id.* at 302.

[6]    *Beegan v. State, Dep't of Transp. & Pub. Facilities*, 195 P.3d 134, 138 (Alaska 2008) (footnote omitted) (citing *Matanuska Elec. Ass'n v. Chugach Elec. Ass'n*, 152 P.3d 460, 465 (Alaska 2007)).

pleadings."[7]  He must "set forth specific facts showing that there is a genuine issue for trial."[8]

## IV.  DISCUSSION

Erkins's briefing is undeveloped, but if we construe his arguments liberally because of his pro se status,[9] he argues that the superior court should not have granted summary judgment because there were material issues of fact that precluded the court from concluding that Bank of New York was a holder in due course.[10]

### A.  Bank Of New York Is Immune From Erkins's Incapacity Defense.

The superior court concluded that Bank of New York was a holder in due course and therefore immune from Erkins's incapacity defense.  "Holder in due course" is a classification for certain holders of negotiable instruments that enjoy heightened protection from defenses to repayment.[11]  Alaska Statute 45.03.302 defines a holder in due course, in relevant part, as a holder who takes an instrument in good faith, for value, without notice that the instrument is overdue, and without notice that any party has a

---

[7]     *See* Alaska Rule of Civil Procedure 56(e).

[8]     *Id.*

[9]     *See Espeland v. OneWest Bank, FSB*, 323 P.3d 2, 12 n.36 (Alaska 2014).

[10]    Erkins also argues that in *Erkins I* we found whether the forbearance agreement constituted constructive fraud to be a genuine issue of material fact such that it must be resolved by a jury.  But the superior court did not rely on the forbearance agreement when granting summary judgment the second time, so it is not relevant to this appeal.

[11]    AS 45.03.302; *see also* 2 JAMES J. WHITE, ROBERT S. SUMMERS & ROBERT A. HILLMAN, UNIFORM COMMERCIAL CODE § 18:1 (6th ed. 2010); U.C.C. § 3-302 (2002).

defense to the payment of the instrument.[12]  After meeting the required criteria, these holders take the negotiable instrument free from many common defenses to enforcement of the instrument.[13]  In essence, "the party able to attain the status of holder in due course qualifies as [a] [s]uperplaintiff."[14]  In theory, holder-in-due-course status facilitates the easy transfer of negotiable instruments: "[a] party should be more willing to take a check from a seller when that party knows that he or she can be a holder in due course and thereby take the check free from the [original] buyer's defenses in the underlying transaction."[15]

A holder in due course is insulated from an incapacity defense only if the incapacity makes the contract voidable.[16]  If incapacity is a condition that voids the

---

[12]     AS 45.03.302(a); *see also* AS 45.03.302(a)(2)(F) (providing that the holder must take without "notice that any party has a defense or claim in recoupment described in AS 45.03.305(a)," a section that lists lack of legal capacity and fraud).

[13]     A holder in due course is insulated from all disputes arising between the original parties to the note, except defenses that concern fraud, capacity, infancy, illegality, duress, or discharge in insolvency proceedings.  *See* AS 45.03.305(b), (a)(1)(B) (providing in part that, although a holder in due course is insulated from many defenses, its right to "enforce the obligation of a party to pay the instrument is subject to [lack of capacity]" when that lack of capacity "nullifies the obligation to the obligor").

[14]     2 WHITE, SUMMERS & HILLMAN, *supra* note 11, at § 18:1.

[15]     *Id.*  A buyer and a seller engage in an initial transaction with the buyer paying the seller by check.  Instead of depositing the check, the seller sells the check to a third party, who wishes to deposit the check.  The third party is much more likely to buy the check from the seller if it knows that the buyer who wrote the check in the initial transaction cannot raise any defenses against its enforcement.

[16]     *See* AS 45.03.305(a)(1)(B) (listing "lack of legal capacity" as a defense if it "nullifies the obligation of the obligor); U.C.C. § 3-305 & cmt. 1 (2002).

contract, the holder in due course is not insulated.[17] Alaska Statute 45.03.302 is modeled on the Uniform Commercial Code, which explains that the "existence and effect [of incapacity] is left to the law of each state."[18] Thus, when state law "render[s] the obligation of the instrument entirely null and void, the defense may be asserted against a holder in due course. If the effect is merely to render the obligation voidable at the election of the obligor, the defense is cut off."[19] The question is whether, in Alaska, incapacity results in a contract that is void or voidable. Alaska's version of the Uniform Commercial Code is silent on this issue.

### 1. The effect of incapacity on the validity of a contract

We have never squarely considered whether incapacity renders a contract void or merely voidable, and no provision of the Alaska Statutes is on point. The Restatement (Second) of Contracts § 15 explains when a contract is voidable due to the contracting party's incompetence. It states that "[a] person incurs only *voidable* contractual duties by entering into a transaction if by reason of mental illness or defect (a) he is unable to understand in a reasonable manner the nature and consequences of the transaction, or (b) he is unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of his condition."[20] The Restatement accords

---

[17]  AS 45.03.305(a)(1)(B); U.C.C. § 3-305 & cmt. 1 (2002).

[18]  U.C.C. § 3-305 & cmt. 1 (2002).

[19]  *Id.* Alaska Statute 45.03.305 likewise explains that lack of legal capacity is a defense that may be used against a holder in due course if the incapacity, "under other law, nullifies the obligation of the obligor." *See* AS 45.03.305(a)(1)(B), (b).

[20]  RESTATEMENT (SECOND) OF CONTRACTS § 15 (1981) (emphasis added).

with the majority rule among other jurisdictions.[21] Adopting a rule that obligations arising during one party's incapacity may be voidable by the incapacitated party will best account for the varying levels of incapacity that courts encounter.[22] Consequently, we hold that a party's incapacity during formation of a contract may result in a voidable — not void — obligation. Because incapacity results in a voidable contract under Alaska law, if Bank of New York is a holder in due course, then it is immune from any incapacity defense Erkins might have.

### 2. Bank of New York's status as a holder in due course

As explained in *Erkins I*, to be a holder in due course "appellee Bank of New York must have taken Erkins's note without knowledge of his incapacity or fraud defenses, and before the note was overdue or in default."[23] Erkins attacks the third part

---

[21] *See* 5 SAMUEL WILLISTON & RICHARD A. LORD, A TREATISE ON THE LAW OF CONTRACTS § 10:3 (4th ed. 2014) (noting that "[t]he vast majority of courts more commonly express the view that an incompetent person's transactions are voidable"); Susanna L. Blumenthal, *The Default Legal Person*, 54 UCLA L. REV. 1135, 1242 (2007) ("The 'modern' rule, as declared by these courts, was that the contracts of lunatics were voidable in a proper case but not wholly void . . . .").

[22] Moreover, "[e]volving understanding of mental illness and advances in medicine have shown that mental capacity can vary over time and is susceptible to significant improvement with treatment." *Hernandez v. Banks*, 65 A.3d 59, 70-71 (D.C. 2013). Thus, "having the choice of whether to follow through on a contract or avoid it can be very beneficial to a person who entered into the contract during a period of incapacity." *Id.* at 71. "If the contracts of mentally incapacitated persons are void, rather than voidable, their legal protection is the opposite of what it should be — [i]t would be a handcuff instead of a shield." *Id.* (alteration in original) (quoting *Breckenridge's Heirs v. Ormsby*, 24 Ky. (1 J.J. Marsh.) 236, 239 (Ky. 1829)) (internal quotation marks omitted).

[23] *Erkins I*, 265 P.3d 292, 301 n.32 (Alaska 2011).

of this test.[24] He argues that there is a genuine issue of material fact whether the note was assigned to Bank of New York before it was overdue.[25] He also argues that the recordation date for the assignment of the deed of trust, November 29, 2007, is the best indicator of the date of assignment and on that date the note was in default.[26]

But recordation is not required for the assignment of an instrument to be valid, and the recordation date for the deed of trust assignment does not raise a genuine issue of material fact regarding when the note was assigned.[27] Thus, the date of the deed of trust's recordation has no bearing on the date that the note was assigned and cannot be the most accurate evidence of when the assignment took place. Erkins fails to raise

---

[24] Erkins does not attack the transfer of the note from Ameriquest to Bank of New York, so we assume without deciding that Bank of New York is a proper holder of the instrument. Erkins argued to the superior court that even if Bank of New York did not have actual notice of his incapacity, it should have been on notice of this possible defense due to Ameriquest's alleged publicly known bad practices. We agree with the superior court that "Ameriquest's alleged improprieties with respect to other loans do not put Bank of New York on notice of specific defenses to the Erkins loan."

[25] Erkins alleges that the "assignment [was] notarized [while] incomplete." We note that the superior court did not consider the assignment of the deed of trust submitted by Bank of New York because it was unauthenticated, so Erkins's arguments about it being "notarized incomplete" are not relevant.

[26] Erkins argues that the "best evidence" of the date of assignment is the date the assignment was recorded. But because the parties are arguing over the occurrence of an event — when the note was transferred — and not the contents of a document, the concept of "best evidence" is inapplicable here. *See* Alaska Rule of Evidence 1002. We will construe Erkins's argument as an argument that the date of recordation is the best indicator of when the note was assigned.

[27] *See* U.C.C. § 3-203 (2002) (requirements for transfer of an instrument); AS 45.03.201 (requirements for negotiation); AS 45.03.203 (transfer of instrument); AS 40.17.080 (recording gives notice to subsequent purchasers); AS 34.20.130 (listing the assignment of the beneficial interest under a deed of trust as a instrument that *may* be recorded); *see, e.g.*, 66 AM JUR. 2D *Records & Recording Laws* § 50 (2015).

any other argument or present any other evidence that the assignment took place after the loan went into default. As the superior court pointed out, Erkins could have conducted discovery and submitted evidence to counter Bank of New York's evidence, but he did not.

At summary judgment the superior court had before it two uncontested affidavits, both submitted by Bank of New York. One affidavit declared that Bank of New York was the owner of the note in August 2005 when the servicing rights to the loan were transferred from Ameriquest to Wilshire Credit Corporation as servicer for Bank of New York. And the other declared that the note was transferred from Ameriquest to Bank of New York in February 2005, shortly after it was originated. Erkins did not provide any evidence to dispute these affidavits, and as they were the only evidence relevant to when the assignment actually occurred, the superior court did not err in concluding that the note was assigned in February 2005, before it went into default.

The undisputed evidence establishes that Bank of New York is a holder in due course. Contrary to Erkins's arguments, the Bank took the note before the note had gone into default. The superior court did not err by granting summary judgment on these grounds.

**B. Erkins Has Failed To Raise A Genuine Issue Of Material Fact Regarding His Other Claims.**

In *Erkins I* we held that the superior court did not err in concluding that "the defendants could not be held liable for the alleged torts of Ameriquest."[28] Here, the superior court granted summary judgment on the remainder of Erkins's claims — intentional and negligent infliction of emotional distress, breach of the implied covenant of good faith and fair dealing, and various claims relating to Alaska Trustee — because

---

[28] *Erkins I*, 265 P.3d at 294.

Erkins failed to provide any evidence to support these claims, aside from the allegations in his complaint.

Erkins alleged negligent and intentional infliction of emotional distress, but failed to provide any evidence that he was actually emotionally distressed by any party's conduct in this case.[29] He alleged that Bank of New York breached the implied covenant of good faith and fair dealing, but he provided no evidence of subjective bad faith or objective unreasonableness by Bank of New York.[30] And he alleged that Alaska Trustee was liable for various torts,[31] but never presented any evidence that Alaska Trustee had any connection to Ameriquest or that the foreclosure was conducted improperly. In order to survive summary judgment, Erkins was required to "set forth specific facts showing that there is a genuine issue for trial."[32] He failed to do this. The superior court correctly granted summary judgment on the remainder of Erkins's claims.

---

[29] The bar for establishing an infliction of emotional distress claim is set very high on the level of emotional stress required: "a plaintiff may recover for only 'severe' or 'serious' emotional distress," which may be shown by "neuroses, psychoses, chronic depression, phobia, and shock." *Chizmar v. Mackie*, 896 P.2d 196, 204 (Alaska 1995) (quoting *Lejeune v. Rayne Branch Hosp.*, 556 So. 2d 559, 570 (La. 1990)) (internal quotation marks omitted).

[30] Demonstrating a breach of the covenant of good faith and fair dealing has both subjective and objective elements: the subjective element requires that the conduct or decision be made in bad faith, and the objective element requires that the party act in a manner that a reasonable person would think unfair. *McConnell v. State, Dep't of Health & Soc. Servs.*, 991 P.2d 178, 184 (Alaska 1999).

[31] Erkins argued: "[1] Trustee has a duty to investigate the assignments to it[;] [2] Trustee failed to investigate the actions of the Beneficiary and of their agents and employees[;] [and 3] Trustee has acted in concert with Beneficiary in this matter."

[32] Alaska R. Civ. P. 56(e).

## V. CONCLUSION

We AFFIRM the superior court in all respects.