Cite as 2019 Ark. 249

# SUPREME COURT OF ARKANSAS

No. CV-17-761

| | |
|---|---|
| | **Opinion Delivered:** September 19, 2019 |
| BULLOCK'S KENTUCKY FRIED CHICKEN, INC.; KAREN KING; AND ARKANSAS PULPWOOD COMPANY, INC.<br><br>APPELLANTS | APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63CV-15-228] |
| V. | |
| CITY OF BRYANT, ARKANSAS, MUNICIPAL PROPERTY OWNERS' MULTIPURPOSE IMPROVEMENT DISTRICT NO. 84; BANK OF THE OZARKS; AND TND DEVELOPERS, LLC<br><br>APPELLEES | HONORABLE GARY ARNOLD, JUDGE<br><br><br><br><br><br>AFFIRMED. |

**SHAWN A. WOMACK, Associate Justice**

This case comes to this court from a decision of the Saline County Circuit Court entered on April 28, 2017, and supplemented on May 23, 2017. The Appellants are Bullock's Kentucky Fried Chicken, Inc. (KFC); Karen Bullock (King); and Arkansas Pulpwood Company, Inc. (APW). Appellees are the City of Bryant, Arkansas, Municipal Property Owners' Multipurpose Improvement District 84 (District 84); Bank of the Ozarks (Ozarks); and TND Developers, LLC (TND). We affirm.

## I. *Facts*

In 2007, TND began contracting to purchase lands comprising 195 acres in Saline County and closed on most of these transactions in August 2007. Two of TND's principals,

Don Spears and Aaron Jones, were also attorneys with the law firm Spears & Jones, land developers, and managed a title company that operated out of their law offices. Spears and Jones were later appointed as initial commissioners of District 84. KFC and King both sold land to TND and agreed to finance part of the purchase prices. TND purchased land from KFC and Bullock Investment for $2,680,000—$1,300,000 paid at closing to Bullock Investment for a tract of land south of Hilltop Road and a $1,380,000 promissory note was issued to KFC for a tract north of Hilltop Road. The King sale was for $125,000 (paid by a $125,000 promissory note delivered at closing) for her tract north of Hilltop Road. Under these two contracts, the KFC and King promissory notes were secured by a first mortgage in the real property they sold north of Hilltop Road. To obtain the necessary funds to finance these purchases, TND received a loan for $3,748,452 from Centennial Bank and issued Centennial a promissory note secured by a first mortgage on all 195 acres.

On August 27, 2007, the Centennial loan and the TND real estate purchases were closed by Spears & Jones. The firm prepared the TND deeds, promissory notes, and mortgages. On August 30, 2007, Spears & Jones recorded the Centennial mortgage first and then filed the KFC and King mortgages shortly thereafter. Ultimately, APW paid off the Centennial mortgage and was granted an assignment of all its interest. APW later foreclosed its mortgage against lands owned by TND.

On October 30, 2007, TND filed a petition with the City of Bryant to form an improvement district for the purpose of "constructing waterworks, sewers, recreational facilities, and systems for gas pipelines, and . . . grading, draining, paving, curbing, and guttering streets and laying sidewalks . . . ." The petition was subsequently approved, and District 84 was formed on November 26, 2007.

2

Commissioners for the improvement district were appointed and they, in turn, appointed Alan King as assessor for the district. Alan King appraised the benefits that would result to tracts within the district and arrived at a total value of improvements of $7,366,668. The assessment of benefits identified real property by lot and block number and an "Order of Assessment" was issued on January 4, 2008, setting the improvement-district taxes at 6 percent of the assessed benefits for each lot or parcel. The lots and parcels were eventually matched with the county assessor records, and tract numbers were assigned to District 84 lands. At issue in this appeal are tracts 840-11625-028 (tract 028), 840-11631-851 (tract 851), and 840-11811-000 (tract 000).

To finance development and construction of the improvements, District 84 entered into a bond indenture for the issuance of $6,110,000 in improvement-district bonds. In conjunction with the bond issuance, District 84 and Ozarks, as trustee, entered into a "Pledge and Mortgage" agreement in which District 84 pledged, mortgaged, assigned, transferred and set over to Ozarks its interest in all special improvement-district taxes then existing or thereinafter levied, including the proceeds from the special taxes levied by District 84.

In 2012, TND ceased payments of improvement-district taxes on the lots it still owned. On March 30, 2015, District 84 filed its complaint to foreclose its improvement-district tax liens for delinquent taxes, naming TND, KFC, King, and APW as party defendants. District 84 described the lands to be foreclosed as all of District 84, less and except certain lots previously sold by TND. On February 29, 2016, APW filed a third-party complaint to bring in Ozarks, seeking an order granting it the right to make a prepayment of the improvement-district taxes under section 9.08 of the "Trust Indenture" agreement. On March 14, 2016, APW filed a

3

counterclaim against District 84 seeking an order compelling District 84 to allow prepayment of the improvement-district taxes for tracts 028, 851, and parts of 000.

On April 28, 2017, the circuit court issued its decree and then a supplemental decree was entered on May 23, 2017. The circuit court granted District 84's request for foreclosure and entered judgment against TND for the total of the unpaid improvement-district taxes, plus penalties, interest, and attorney's fees. It further ordered all TND lands within the district sold with the proceeds applied against District 84's judgment. The circuit court also ruled that there was no right to prepay improvement taxes and have particular tracts released from the tax lien. KFC and King were granted judgment against TND and Aaron Jones individually, for $1,380,000 and $125,000, respectively, plus accrued interest and their mortgage liens were ordered foreclosed. Because Jones recorded the KFC and King mortgages after the Centennial mortgage, the circuit court found that Jones, individually and in his agency capacity for TND, committed fraud against KFC and King. The circuit court, however, denied KFC's and King's request to find that Jones committed fraud in his capacity as commissioner of District 84, to impute his fraud to District 84, or to find that Jones's fraud impacted the validity or priority of District 84's lien. The circuit court also denied KFC's and King's due-process and equal-protection claims as well as their affirmative defenses of equitable subordination/estoppel or subrogation.

II. *Foreclosed Property*

On appeal, Appellants APW, KFC, and King argue that District 84's lien for nonpayment of improvement taxes can only attach to individual tracts upon which taxes were actually delinquent and unpaid. Specifically, Appellants argue the land north of Hilltop Road is

4

not "real property" under the definition of the governing statute, and therefore an in rem judgment cannot be attached to those tracts.

This court reviews issues of statutory construction under a de novo standard. *Ligon v. Stewart*, 369 Ark. 380, 386, 255 S.W.3d 435, 439 (2007). The basic rule of statutory construction is to give effect to the intent of the legislature. *Dachs v. Hendrix*, 2009 Ark. 542, at 8, 354 S.W.3d 95, 100. Where the language of a statute is plain and unambiguous, the reviewing court determines legislative intent from the ordinary meaning of the language used. *City of Little Rock v. Jung Yul Rhee*, 375 Ark. 491, 495, 292 S.W.3d 292, 294 (2009). In considering the meaning of a statute, we construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Great Lakes Chem. Corp. v. Bruner*, 368 Ark. 74, 82, 243 S.W.3d 285, 291 (2006).

Arkansas Code Annotated sections 14-94-101 et seq. govern the improvement-district law at issue in the present appeal. Arkansas Code Annotated section 14-94-115(a)(1) (Repl. 1998) requires that upon the creation of an improvement district, an appointed assessor shall assess the benefits accrued to the real property within the district as a result of any improvements. Arkansas Code Annotated section 14-94-118(a)(1) (Repl. 1998) provides that following the assessment of benefits, the improvement district board will enter an order levying upon the real property of the district a tax sufficient to pay the estimated cost of the improvements. Subdivision (a)(2) explains that this tax is to be paid by the real property owners of the district in proportion to the amount of the assessment of benefits thereon. Ark. Code Ann. § 14-94-118(a)(2). Appellants contend that the unimproved tracts of 028 and 851 north of Hilltop Road do not meet the definition of "real property" set forth in this chapter because those lands did not accrue any direct benefits from improvements and are therefore not subject to the

5

foreclosure proceedings detailed in Arkansas Code Annotated section 14-94-122 (Repl. 1998). Arkansas Code Annotated section 14-94-103(10) (Repl. 1998) defines "real property" as being all property subject to assessment. Thus, to be defined as "real property" for the purposes of this chapter, land need only be subject to assessment—a benefit need not actually be assessed. The record indicates that the land north of Hilltop Road was subject to the initial assessment and therefore constitutes "real property."

Despite Appellants' contention that District 84's tax lien attaches only to individual tracts in delinquency, section 14-94-118 makes clear that all unreleased property within the district is subject to the lien. Subsection (b) states that "[t]he tax so levied shall be a lien upon *all the real property* in the district from the time it is levied . . . ." (Emphasis added.) A plain reading of the statute indicates a legislative intent for all property within the district to be subject to the tax lien. If the legislature had intended for the lien to attach only to individual tracts within an improvement district to which a benefit had been assessed, it could have so stated.

Additionally, Appellants argue the requirement in this chapter that foreclosure actions proceed in rem means District 84 could only foreclose on specific tracts that were delinquent, not all real property within the improvement district. Arkansas Code Annotated section 14-94-122(b)(4) provides that proceedings and judgments shall be in rem. Our court has defined in rem proceedings in a foreclosure action as a proceeding against the property. *See Simpson v. Reinman*, 146 Ark. 417, 227 S.W. 15 (1920). Given that the legislative intent indicates that the lien attaches to all unreleased property within an improvement district, it is fair to assume the requirement of in rem proceedings merely intends to limit the scope of a foreclosure action under this statute to real property within a district. This is especially true if subdivision (b)(4) is read together with subsection (b)(5)(B), which states, "Judgment shall be enforced wholly

6

against the lands and not against any other property or estate of the defendant." Ark. Code Ann. § 14-94-122(b)(4)–(5)(B). Because the district assessed all real property within its boundaries and established delinquent taxes were owed, we hold the circuit court's judgment can be upheld on an in rem basis.

## III. *Land Description*

Appellant APW alleges that District 84's complaint improperly described the lands within the district that were delinquent and subject to foreclosure and failed to set forth the amount chargeable to each separate tract. Pursuant to section 14-94-122(e)(4), District 84's complaint was required to "allege generally and briefly the organization of the district and the nonpayment of the taxes, setting forth the description of the lands proceeded against, and the amount chargeable to each tract . . . ." In its complaint, District 84 described the entire improvement district without denoting which individual tracts were delinquent. The district also did not set forth the amount chargeable to each tract. APW argues that District 84's description fails to comply with the statute—that each tract within the district should have been separately described in the complaint and the taxes against each should have been separately listed.

Although section 14-94-122(e)(4) contains the word "tract," the legislature does not define the term anywhere in the chapter nor does it contain specific instructions for how a district should delineate land to be foreclosed upon within its boundaries. For the purposes of a foreclosure on a delinquent tax lien, our court has said that a complaint is sufficiently descriptive if it fully apprises the owner that the particular tract of his land is subject to a tax lien and notifies the public what lands are to be offered for sale. *See N. Rd. Improvement Dist. of Ark. Cty. v. Simmerman*, 188 Ark. 627, 630, 67 S.W.2d 197, 199 (1934). District 84's complaint plainly

7

describes the land it seeks to foreclose, as well as the tracts excluded from the action. The complaint also identifies TND as the owner of the land and the total amount of taxes owed. We conclude the circuit court did not erroneously allow District 84 to proceed on the basis of a statutorily defective complaint.

IV. *Prepayment of Improvement Taxes*

Next, Appellant APW argues that District 84 and Ozarks improperly refused to allow it to prepay the improvement taxes on individual tracts within the district to release those tracts from the tax lien. APW relies on section 14-94-118(b) and section 9.08 of the Trust Indenture to support its claim that it was entitled to prepay improvement taxes at any time prior to full rendition of judgment. Arkansas Code Annotated section 14-94-118(b) provides that with the written approval of a district's board, the county clerk shall release any lot or tract from the lien for the assessment following prepayment of the taxes. Section 9.08(a) of the Trust Indenture provides the procedure for prepaying improvement taxes and obtaining a release from the lien:

> (a) **Upon the initial sale of a Lot by the Developer**, **on behalf of the purchaser of that Lot** and at the direction of the purchaser of that Lot **the Developer *may* pay . . . the Series A Bonds Prepayment Amount for that Lot**, but the Developer shall pay the Series A Bonds -A Prepayment Amount for that Lot. The Special Tax *may* be prepaid in full and a Lot released from the lien of the Pledge and Mortgage and this Indenture upon the payment to the Trustee either by the owner of said Lot or any third party, of both the following amounts: (i) the Series 2008-A Prepayment Amount associated with that Lot for depositing into the Series 2008-A Tax Prepayment Subaccount (except that current year's Special Tax and any penalties and interest thereon portion of such Series 2008-A Prepayment Amounts, which shall be paid directly to the Tax Collector) and (ii) the Series 2008-B Prepayment Amount associated with that Lot for depositing into the Series 2008-B Tax Prepayment Subaccount (except that current year's Special Tax and any penalties and interest thereon portion of such Series 2008-B Prepayment. Amounts, which shall be paid directly to the Tax Collector). Upon receipt of a Series 2008-A Prepayment Amount and a Series 2008-B Prepayment Amount for a given Lot, (a) the Trustee shall execute and deliver to the owner of the Lot for which the Series 2008-A Prepayment Amount and the Series 2008-B Prepayment Amount was paid a

release from this Indenture and the Pledge and Mortgage; (b) the District shall deliver to the Tax Collector written authorization for the Tax Collector to release said Lot from the lien of the Special Tax, and (c) a Special Tax lien release to be executed and recorded by the Tax Collector. Upon receipt of the necessary documentation, the Tax Collector shall release the Lot from the lien of the Special Tax and shall immediately remove said Lot from the District's special assessment and taxation books.

(Emphasis added.)

The first rule in interpretation of a contract is to give to the language employed the meaning that the parties intended. *Cooper v. Kalkwarf (Cooper)*, 2017 Ark. 331, at 11, 532 S.W.3d 58, 65. In construing any contract, courts must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. *Id*. The best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it, as it may be safely assumed that such was the aspect in which the parties themselves viewed it. *Singletary v. Singletary*, 2013 Ark. 506, at 10, 431 S.W.3d 234, 240.

Here, section 9.08 of the Trust Indenture sets forth the conditions to be satisfied so as to remove an assessment lien. The prepayment provision of section 9.08 only comes into effect "[u]pon the initial sale of a Lot by the Developer . . . ." By the clear and unambiguous terms of the Trust Indenture, section 9.08 was never triggered because the tracts at issue (028, 851, 000) were never sold by TND. Additionally, APW's reliance on section 14-94-118(b) is inapplicable, as there is no evidence of written approval by District 84's board to release any tracts, and APW never actually paid the assessments taxes.

APW also relies on *First United Bank v. Phase II, Edgewater Addition Residential Property Owners Improvement District No. 1*, 347 Ark. 879, 69 S.W.3d 33 (2002). In *Edgewater*, this court held that a trustee had breached the indenture when it refused to release a lot to a purchaser who had paid the "Lot Release Price." *Id*. at 897, 69 S.W.3d 46. The present appeal is factually

distinguishable from *Edgewater*, however, because APW never actually paid the Lot Release Price to release any District 84 tract from the assessment-tax lien. Moreover, APW's right to prepayment is not absolute. Upon the sale of a lot by the developer, the Trust Indenture provides permissive—not mandatory—language regarding the prepayment of assessment taxes. Section 9.08 states, "The Special tax *may* be prepaid in full and a Lot released from the lien . . . ." (Emphasis added.) According to the clear terms of the Trust Indenture, we find neither District 84 nor Ozarks improperly refused prepayment of improvement taxes.

V. *Jones's Fraud*

Appellants KFC and King argue the circuit court erred by not imputing Aaron Jones's fraud to District 84 and in failing to find that his fraud impacted the validity or priority of the district's lien. At trial, the circuit court found that Jones had committed fraud individually and in his agency capacity for TND against KFC and King. Per the terms of the contracts, the mortgages of KFC and King were both to be first mortgages. Jones, however, recorded the Centennial mortgage before the KFC and King mortgages, causing KFC and King to have a third priority lien behind District 84 and Centennial. The circuit court did not find that Jones's fraud should be imputed to District 84 or that it impacted the validity or priority of the district's lien.

The standard of review on bench trials is whether the circuit court's findings were clearly erroneous. *Knight v. Day*, 343 Ark. 402, 405, 36 S.W.3d 300, 302 (2001). An appellate court reviews the evidence in the light most favorable to the appellee, resolving all inferences in favor of the appellee. *Id.*

Appellants assert that Jones, in his position as District 84's commissioner, knew that by the issuance of the bonds, the trustee, Ozarks, on behalf of the bondholders, would claim

priority over Appellants and cause them further damage. Thus, Appellants argue there existed an agency relationship between Jones and District 84, thereby necessitating the imputation of Jones's fraudulent behavior to the district. The two essential elements of an agency relationship are (1) that an agent have the authority to act for the principal, and (2) that the agent act on the principal's behalf and be subject to the principal's control. *Pledger v. Troll Book Clubs, Inc.*, 316 Ark. 195, 200, 871 S.W.2d 389, 392 (1994).

Appellants' argument fails for two reasons. First, Appellants have identified no actions that Jones took, as a commissioner of District 84, that resulted in damage to Appellants. Jones's fraudulent actions in securing promissory notes from Appellants and failing to properly record those mortgages occurred before District 84 was created. Jones purchased land from KFC and King in February and June 2007 and recorded the mortgages in August 2007. District 84 was not created until November 2007. Therefore, an agency relationship between Jones and District 84 did not exist at the time Appellants were defrauded. Second, Appellants' claim of injury from the actions of Jones—the creation of a preferential lien by District 84—did not arise as a result of Jones's fraud. Rather, the priority of District 84's lien was the result of statutory procedure as set out in section 14-94-118(b). Regardless of the actions of Jones, District 84 is statutorily entitled to first priority of its lien on TND's real property within the district. It is on this point that Appellants' claims for equitable estoppel or equitable subordination also fail.

## VI. *Due Process*

Finally, Appellants KFC and King assert that the circuit court erred in denying their affirmative defenses of due process and equal protection. Appellants claim that as a result of the circuit court's order, there was an unconstitutional taking of their property without due process. A circuit court's interpretation of a constitutional provision is reviewed de novo. *Gatzke v.*

11

*Weiss*, 375 Ark. 207, 210–11, 289 S.W.3d 455, 458 (2008). In the absence of a showing that the court erred in its interpretation, that interpretation will be accepted on appeal. *Id.*

Appellants allege a violation of due process in two instances. First, they contend that District 84 violated their due-process rights by publishing notice of the creation of the district, assessment of benefits, and issuance of bonds. Second, District 84 committed an unconstitutional taking by assessing benefits to property north of Hilltop Road. Due process is based in the Fifth Amendment of the United States Constitution made applicable to the States through the Fourteenth Amendment to the United States Constitution, as well as article 2, sections 8 and 21 of the Arkansas Constitution.

With their due-process claims, Appellants make what amounts to be a constitutional challenge to the notice provisions of sections 14-94-101 et seq. Yet Appellants concede in their brief that there is a presumption of validity of a statute's constitutionality, and this court will construe a statute as constitutional whenever possible. *See Mendoza v. WIS Int'l, Inc.*, 2016 Ark. 157, at 3, 490 S.W.3d 298, 300. Before an act will be held unconstitutional, the incompatibility between it and the constitution must be clear. *See id*. Further, this court will refrain from addressing constitutional issues if or when the case can be disposed of without determining constitutional questions. *See Prock v. Bull Shoals Boat Landing*, 2014 Ark. 93, at 17, 431 S.W.3d 858, 869. Appellants argue that the notice provisions within Arkansas Code Annotated sections 14-94-101 et seq. violate the principles of due process because they failed to provide personal service.[1] Nevertheless, this court has said that indirect notice, such as notice by publication, is

---

[1]In 2009, after the formation of District 84, Arkansas Code Annotated section 14-94-106 (Supp. 2017) was amended to require notice of the hearing on the formation of the district to be sent to any mortgagee holding a first mortgage lien on real property constituting more than ten percent (10%) of real property located in the district. *See* Ark. Code Ann. § 14-94-

sufficient in matters affecting real estate. *See House v. Rd. Improv. Dist.*, 158 Ark. 330, 340–41, 251 S.W. 12, 15 (1923); *Cypress Creek Farms v. L'Anguille Improv. Dist. No. 1*, 274 Ark. 518, 626 S.W.2d 357 (1982). Appellants fail to establish that notice by publication is not appropriate to the circumstances of this case. Further, Appellants' argument regarding the assessment of benefits to the property north of Hilltop Road is not preserved because they failed to timely appeal the "Order of Assessment." *See* Ark. Code Ann. § 14-94-116(b) (Repl. 1998). For these reasons, the circuit court's order did not violate Appellants' due-process rights.

Affirmed.

Special Justice REX TERRY joins.

HART, J., dissents.

WOOD, J., not participating.

**JOSEPHINE LINKER HART, Justice, dissenting.** The majority mischaracterizes APW's argument. APW argues that if no taxes were owed on a tract of land within District 84, there can be no delinquency; and with no delinquency, there can be no foreclosure. APW does not dispute that TND failed to pay improvement taxes on improved tracts of land subject to assessment that TND owned within District 84's boundaries. However, TND owned other tracts—specifically, tracts 028 and 851, which had no improvement, no assessment levied, and no delinquency. Even so, these tracts, too, were included within District 84's foreclosure action. Additionally, APW asserts that the proceeding to recover the delinquent taxes is "in rem," and other assets of the landowner's estate are not subject to foreclosure to satisfy the improvement-

---

106(a)(2)(B). The statute allowing publication notice of the assessment of benefits remains unchanged.

13

tax assessment and its delinquency. This argument is compelling.

The plan for developing District 84 contemplated two phases. Phase I involved the lands south of Hilltop Road, and those lands were subject to improvements. The lands north of Hilltop Road, including tracts 028 and 851, were part of Phase II that were not improved. Likewise, TND received no benefit from the improvements placed on lands in Phase II. Accordingly, District 84 tax assessor Alan King assessed no improvement taxes for those lands.[1] Nonetheless, these tracts were made subject to the foreclosure action. This was clear error.

Arkansas Code Annotated section 14-94-122(b)(3) specifies that the "judgment shall provide for the sale of *delinquent* lands." (Emphasis added.) If no taxes were owed on the property in Phase II, there can be no tax delinquency. Furthermore, section 14-94-122(b)(5)(B) expressly states, "Judgment shall be enforced wholly against the lands and not against any other property or estate of the defendant." Including those tracts owned by TND that were *not* "delinquent lands" is a clear violation of section 14-94-122(b)(5)(B).

Accordingly, the circuit court's final judgment in this case—granting District 84 a money

---

[1]January 4, 2008 – The Commissioners for District 84 issued an Order of Levy approving the Assessment of Benefits as prepared by Alan King. The total assessment for the entire district was $7,366,668. One 17-acre parcel was assessed with $150,000 and a 143.3-acre parcel was assessed with $266,000. Two tracts north of Hilltop road (included within the 143.3-acre tract), tracts 028 and 851, had no assessment at all.

December 1, 2012, Alan King instructed the Saline County collector that there were no assessments or delinquencies for any lands north of Hilltop Road, listed as tracts #840-11625-028 (028) and #840-11631-851 (851).

September 18, 2013, Alan King instructed the Saline County collector there were no assessments or delinquencies for lands north of Hilltop Road, listed as tracts 028 and 851. April 22, 2014, Alan King advised in an email that the assessments for all lands lying north of Hilltop Road were zero.

judgment in personam against TND for the total of the delinquent improvement taxes and granting District 84 a priority lien on all the land, described in gross, owned by TND within the district and not on a lot-by-lot, tract-by-tract basis for the delinquent taxes against each lot or tract—was outside of the clear statutory authority granted to the circuit court.

I am troubled not only with specific provisions of this act but also with the majority's interpretation that, in my view, renders this act constitutionally infirm. This case should therefore be reversed and remanded to the circuit court for further proceedings without this mistake of law.

I respectfully dissent.

*James, House Downing & Lueken, P.A.*, by: *Richard C. Downing* and *Charley E. Swann*, for appellants Bullock's Kentucky Fried Chicken and Karen Bullock King.

*Harrell, Lindsey & Carr, P.A.*, by: *Paul E. Lindsey*, for appellant Arkansas Pulpwood Company, Inc.

*Don A. Eilbott – Attorney, PLC*, by: *Don A. Eilbott*, for appellee City of Bryant Municipal Property Owners' Multipurpose Improvement District No. 84.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Lance R. Miller* and *Megan D. Hargraves*, for appellee Bank of the Ozarks.